UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SCOTT A. HINCKLEY,            )
                              )
        Plaintiff             )
                              )
v.                            )   No. 2:10-cv-197-GZS
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant             )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a right knee injury with resulting degenerative changes, status-post four surgical procedures since the age of 10, an anxiety disorder with obsessive compulsive traits, and an anger disorder, Finding 3, Record at 10; that he retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a)

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

and 416.967(a), except that he could lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, had to be able to alternate between sitting and standing every 30 minutes, could not perform repeated squatting, was limited to occasional contact with the public and occasional interaction with co-workers and supervisors, and was limited to work that was no more than moderately detailed and did not exceed a Specific Vocational Preparation ("SVP") level of 3, Finding 5, *id.* at 12; that, considering his age (28 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (acquisition of work skills from past relevant work), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 17-18; and that he, therefore, was not disabled from December 31, 2006, his alleged disability onset date, through January 29, 2010, the date of the decision, Finding 11, *id.* at 19.[2] The Decision Review Board selected the decision for review but failed to act within 90 days, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] The plaintiff is insured for purposes of SSD benefits through June 30, 2012. *See* Finding 1, Record at 9.

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

**I. Discussion**

The plaintiff contends, in effect, that the administrative law judge's RFC finding is unsupported by substantial evidence in that she (i) misinterpreted the records of the plaintiff's treating psychiatrist, Gerald P. Floreza, M.D., as undercutting rather than supporting the plaintiff's claim, (ii) rejected the mental RFC opinion of the plaintiff's treating psychiatric nurse practitioner, Amy Liston, N.P., in contravention of Social Security Ruling 06-03p ("SSR 06-03p"), and (iii) misinterpreted the records of the plaintiff's former treating orthopedic surgeon, James Kuhn, M.D., insupportably according them greater weight than the physical RFC opinion of a later treating source, nurse practitioner Allison Talon, A.N.P.-B.C. *See* Plaintiff's Statement of Errors ("Statement of Errors") (Docket No. 10) at [3]-[11]. On these bases, he seeks reversal and remand with instructions to award benefits. *See id*. at [12]. I find no error and, accordingly, recommend that the court affirm the decision.

**A. Interpretation of Floreza Records**

Dr. Floreza, along with Liston, began treating the plaintiff on February 5, 2007. *See* Record at 532-39. Thereafter, Dr. Floreza saw the plaintiff every three months for purposes of medication management/psychiatric evaluation, *see, e.g., id*. at 474, 512, while Liston saw him

every one to two months for purposes of medication management and therapy, *see, e.g., id*. at 481, 555. Treatment by both Dr. Floreza and Liston continued as of December 1, 2009, the date that Liston completed a mental RFC evaluation of the plaintiff, *see id*. at 555, 560, although Liston indicated that, as of that date, Dr. Floreza had most recently seen the plaintiff on October 30, 2009, and she had most recently seen him on August 3, 2009, *see id*. at 555.

In her mental RFC evaluation, Liston indicated that the plaintiff's mental impairments of intermittent explosive disorder and narcissistic and anti-social traits, *see id*., would cause occasional to severe limitations in several work-related functions, including completing a normal workday and workweek without interruptions from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, dealing with the stress of semi-skilled and skilled work, and interacting appropriately with the general public, *see id*. at 557-58.[3] She also indicated that his mental impairments would cause moderate to severe limitations in dealing with normal work stress and maintaining socially appropriate behavior. *See id*. She stated that the plaintiff had been unable to hold a job or work collaboratively with others. *See id*. at 560.

The administrative law judge stated:

> [Dr. Floreza], the [plaintiff's] treating psychiatrist, noted that the [plaintiff's] anger management and compulsive traits have shown improvement and are well controlled with his current psychotropic regime consisting of Lamictal and Paxil with no side effects. The undersigned notes that the opinion of [Liston], the [plaintiff's] treating psychiatric nurse practitioner, contradicts the opinion of Dr. Floreza, the [plaintiff's] treating psychiatrist[,] as well as her own treating notes regarding the [plaintiff's] general medical condition. The undersigned further

---

[3] The mental RFC questionnaire that Liston completed contained five categories of limitation: unlimited, slightly limited (diminished ability would likely be apparent not more than a few times in a typical workday), moderately limited (diminished ability would likely be apparent as often as one or two times per hour and up to 10 percent of a typical workday), occasionally limited (diminished ability would likely be apparent up to a third of a typical workday), and severely limited (diminished ability would likely be readily apparent most of the time in a typical work environment). *See* Record at 557.

4

> notes the [plaintiff's] limitations with respect to his ability to interact with others and has accounted for this with respect to only occasional contact with the public and occasional interaction with co-workers and supervisors. With respect to the [plaintiff's] anxiety, the undersigned limits the [plaintiff] to work not to exceed SVP3 consistent with the opinion of his treating psychiatrist, Dr. Floreza.

*Id*. at 15-16 (citations omitted).

The administrative law judge attributed great weight to Dr. Floreza's opinion, reasoning that Dr. Floreza was the treating psychiatrist, his opinions were based on his treating relationship with the plaintiff, providing a longitudinal view of the plaintiff's course of treatment and functional limitations, and his opinion was consistent with the medical evidence of record and the evidence as a whole. *See id*. at 16. She attributed little weight to the mental RFC assessment of Liston, which she found contradicted by Dr. Floreza's opinion and the credible medical evidence of record. *See id*.

The plaintiff complains that the administrative law judge misconstrued Dr. Floreza's treatment notes and, in any event, should have given greater weight to the opinion of Liston, who saw the plaintiff more frequently and was in the better position to assess his functional limitations, having provided direct therapy rather than solely medication management. *See* Statement of Errors at [4]-[6]. Neither point has merit.

The administrative law judge supportably construed Dr. Floreza's treatment notes as indicating that the plaintiff's psychiatric symptoms were well-controlled on medication. Dr. Floreza's note of July 7, 2009, is typical of his findings throughout the more than two-year period of his treatment of the plaintiff. In the subjective portion of that note, Dr. Floreza recorded the plaintiff's own report that the medications were helping him and that, as confirmed by the people around him, he tended to be more irritable if he did not take them. *See* Record at 474. In the objective portion of that note, Dr. Floreza observed that the plaintiff was appropriate

toward him, had goal-directed thought processes, was engaging, displayed a neutral mood, had a congruent mood and affect, was not suicidal or homicidal, had no cognitive impairment or psychosis, and had intact insight and judgment. *See id.* Dr. Floreza made similar observations throughout his course of treatment of the plaintiff. *See, e.g., id.* at 479, 486, 501, 503, 515-16. Liston's notes, as well, reflect that, while the plaintiff continued to struggle with anger management and anti-social tendencies, he was generally able, with the aid of his medications, to control those symptoms. *See, e.g., id.* at 477, 481, 491, 494, 498, 505.[4]

Against this backdrop, the administrative law judge supportably chose to accord more weight to the notes of Dr. Floreza than to the mental RFC opinion of Liston. The court cannot reweigh the evidence and substitute its judgment for hers. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").[5]

### B. Handling of Liston Mental RFC Opinion

The plaintiff next faults the administrative law judge for according little weight to Liston's mental RFC assessment, in asserted contravention of SSR 06-03p. *See* Statement of

---

[4] The plaintiff asserts that the treatment notes reflect that he controlled the outbursts, anger, and rage resulting in large part from his traumatic childhood only by avoiding people and rarely leaving his home, as illustrated by a June 8, 2009, note of Liston recording his report that his mood was fairly good except when he was around people, that he had attended a festival with his son but had to leave after a short time because of the crowds, and that he had gotten into an argument with a man who came to his house. *See* Statement of Errors at [5]-[6]; Record at 475. Yet, in the same note, Liston also recorded the plaintiff's report that he was taking his medications regularly and felt that they were very helpful with his anxiety/compulsiveness, irritability, and aggression, and noted in the objective section of her report that he was pleasant and had good eye contact, his affect was generally jovial and broad in range, his mood was "not too bad," and his insight and judgment were adequate. *See* Record at 475.

[5] The plaintiff considers "critical" the fact that Dr. Floreza repeatedly described Liston as the plaintiff's "regular provider," arguing that Dr. Floreza implicitly agreed that Liston, who provided ongoing therapeutic counseling, was in a better position to assess the plaintiff's impairments and functioning and that he deferred to her judgment in those matters. *See* Statement of Errors at [4]-[6]. To the contrary, Dr. Floreza's notes reflect careful independent assessment of the plaintiff's mental status and functioning incident to the management of his medications. *See, e.g.*, Record at 474, 479, 486.

Errors at [7]-[9]. This complaint is without merit. The administrative law judge's handling of the Liston opinion comported with that ruling.

As the plaintiff acknowledges, *see id.* at [7], Liston, a nurse practitioner, does not qualify as an "acceptable medical source" for Social Security purposes, *see* 20 C.F.R. §§ 404.1513(a), 416.913(a). "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010), at 329. Yet, evidence from "other sources" such as Liston may not be ignored:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at 330. "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors[.]" *Id.* at 331. Finally:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at 333.

The administrative law judge met the requirements of SSR 06-03p with respect to the Liston opinion. She did not ignore it. She explained that she had given it little weight. *See*

7

Record at 16. And, she provided an explanation sufficient to follow her reasoning, namely, that Liston's opinion was contradicted by the treatment notes of an "acceptable medical source," Dr. Floreza, and the credible medical evidence of record. *See id*.

Although SSR 06-03p, in contrast to regulations pertaining to the handling of treating source opinions, does not require that an adjudicator articulate "good reasons" for the rejecting of an "other source's" opinion, *compare* SSR 06-03p at 333 *with* 20 C.F.R. §§ 404.1567(d)(2), 416.927(d)(2), the administrative law judge did that as well. As noted above, she supportably found that the Liston opinion did not comport with Dr. Floreza's treatment notes or even those of Liston herself.[6]

The administrative law judge committed no error in her handling of the Liston mental RFC opinion.

## C. Interpretation of Kuhn Records

The plaintiff finally faults the administrative law judge for choosing to accord greater weight to the physical RFC opinions of the plaintiff's treating surgeon, Dr. Kuhn, than to those of a more recent treating provider, nurse practitioner Allison Talon, who submitted a physical RFC opinion dated November 18, 2009. *See* Statement of Errors at [9]-[11]. I find no basis on

---

[6] The plaintiff cites *Dumensil v. Astrue*, Civil No. 10-cv-060-SM, 2010 WL 3070107 (D.N.H. Aug. 4, 2010), for the proposition that, in accordance with SSR 06-03p, the opinion of a non-acceptable medical source may outweigh that of an acceptable medical source if the non-acceptable source has seen the individual more and has provided better supporting evidence and a better explanation for his or her opinion. *See* Statement of Errors at [9]. *Dumensil* is distinguishable. In *Dumensil*, the only opinion evidence of record suggesting that the claimant had the RFC to perform a range of light work was that of a nonexamining state agency physician who had offered little explanation for his conclusions. *See Dumensil*, 2010 WL 3070107, at *5. The court held that the administrative law judge "was obligated to provide a more detailed explanation for his decision to reject the opinions of the physician assistant, . . . the medical professional with arguably the most detailed knowledge of claimant's condition, her treatment, and her response to that treatment." *Id*. at *7. Here, the administrative law judge accorded the well-supported opinion of a treating acceptable medical source, Dr. Floreza, more weight than the less well supported opinion of a treating non-acceptable medical source, Liston.

8

which to disturb the administrative law judge's resolution of this conflict in the evidence, and no contravention of SSR 06-03p with respect to the handling of the Talon opinion.

Dr. Kuhn performed knee surgery on the plaintiff on December 18, 2007, *see* Record at 335-36, and followed him postoperatively until April 30, 2008, at which time he noted that the plaintiff could engage in employment 20 or more hours per week with no prolonged standing or walking, *see id*. at 348. Although Dr. Kuhn, on that form, apparently circled but then crossed out an answer of "Yes" to the question asking whether the plaintiff could engage in employment 30 or more hours per week, *see id*., he had indicated on a form dated March 7, 2008, that the plaintiff could work a total of eight hours per workday doing light work (lifting less than 20 pounds) with no standing/walking for more than two hours, *see id*. at 350, and on a form dated January 16, 2008, that the plaintiff could work a total of eight hours per workday doing sedentary work (lifting less than 10 pounds) with no prolonged standing/walking, *see id*. at 352.[7]

Talon, who began seeing the plaintiff on August 25, 2009, *see id*. at 550, indicated in her physical RFC form, *inter alia*, that he (i) probably could not consistently complete a normal workday and workweek without interruptions from physically-based symptoms, (ii) probably could not consistently complete a typical eight-hour workday or 40-hour workweek without interruptions from psychologically-based symptoms, (iii) probably could not perform at a consistent pace without more than the minimum number and length of required rest periods, and (iv) had upper extremity restrictions that included a need to avoid repetitive use of the hands for

---

[7] Another treating provider, Debra A. Rothenberg, M.D., stated that Dr. Kuhn imposed lifetime restrictions on the plaintiff of no extended standing, no walking, and no lifting of more than 15 to 20 pounds. *See* Record at 359. Dr. Kuhn did not bar the plaintiff from doing *any* walking. *See, e.g., id*. at 350, 352. Moreover, the record, including Dr. Rothenberg's note, reflects that the plaintiff could and did walk, *see id*. at 360 ("[l]oves to walk all over Portland"), albeit sometimes with a cane, *see, e.g., id*. at 365.

gross motor function activities and keyboarding, a need to avoid working with arms at or above shoulder height, and a need to avoid pushing or pulling with the arms, *see id*. at 551-52.

With respect to the plaintiff's physical RFC, the administrative law judge explained that she accorded (i) the greatest weight to the Kuhn opinions, (ii) great weight to the September 5, 2008, opinion of Disability Determination Services ("DDS") examining consultant Richard Stockwell, D.O., and (iii) little weight to the opinion of Talon, which she found contradicted by the "acceptable medical source" opinions of Drs. Kuhn and Stockwell as well as by Talon's own notes. *See id*. at 16.

The administrative law judge supportably construed the opinions of Drs. Kuhn and Stockwell as corroborating the plaintiff's ability to perform full-time sedentary work with no upper-extremity restrictions and with the limitations that he could lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, had to be able to alternate between sitting and standing every 30 minutes, and could not perform repeated squatting. *Compare* Finding 5, *id.* at 12 *with id*. at 350, 352 (Kuhn opinions), 391 (Stockwell opinion). She further supportably found the Talon physical RFC opinion to be inconsistent with the Kuhn and Stockwell findings and with the one Talon treatment note of record, dated August 25, 2009, in which, although Talon noted the plaintiff's history of numerous right knee surgeries and chronic pain, as well as a discrepancy in his leg lengths, she recorded no upper-extremity findings and, on physical examination, no scoliosis or deformity, a normal gait, and no joint swelling. *See id*. at 543-44.[8]

---

[8] At oral argument, the plaintiff's counsel contended that Dr. Kuhn's crossing out of the answer "Yes" to the question of whether the plaintiff could work 30 or more hours per week, indicating that the plaintiff could not work full-time, *see* Record at 348, should have been given significant weight and discussed in detail by the administrative law judge, who instead ignored it. The plaintiff arguably forfeited this argument by not making it in his statement of errors. While he mentioned the Kuhn opinion, he did so in the context of arguing that the administrative law judge erred in rejecting the Talon opinion because, *inter alia*, it was supported by Dr. Kuhn's opinion that the plaintiff was limited to part-time work. *See* Statement of Errors at [11]. In any event, assuming *arguendo* that the contention made at oral argument is cognizable and that the administrative law judge erred in not discussing that aspect of Dr.
*(continued on next page)*

There was no error in the handling of either the Kuhn or Talon opinions.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of March, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

Kuhn's April 30, 2008, opinion, the error is harmless. The record as a whole, including Dr. Kuhn's March 7, 2008, and January 16, 2008, opinions and Dr. Stockwell's opinion, *see* Record at 350, 352, 391, supplies substantial evidence for the finding that the plaintiff could work full-time with the limitations found by the administrative law judge.